IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROY FRANKLIN ECHOLS, JR.,

    Plaintiff,

v.                                     Civil Action No. 3:16CV294

CSX TRANSPORTATION, INC.

    Defendant.

**MEMORANDUM OPINION**

Roy Franklin Echols, Jr., a Virginia inmate proceeding pro se and in forma pauperis, has filed this action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq.[1] The matter is before the Court on the Motion to Dismiss filed by Defendant CSX Transportation, Inc. ("CSX") (ECF No. 25); Echols's Motion to Leave and Amend ("Motion to Amend,"

---

[1] The Act provides, in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, truck, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

ECF No. 36); and CSX's Second Motion to Stay Proceedings (ECF No. 38). For the reasons stated below, because the action is barred by the statute of limitations, the Court will grant the Motion to Dismiss, deny the Motion to Amend, and deny as moot the Second Motion to Stay Proceedings.

## I. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally

3

construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, sua sponte, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS

Echols was employed by CSX's Engineering Department as a trackman from April of 1981 until September of 1997, when he was arrested on felony charges. (Compl. ¶ 5, ECF No. 1.)[2] During his employment, Echols "was constantly exposed to airborne coal and rock dust while performing his daily assigned tasks . . . ." (Id. ¶ 6.) Echols states:

> On or about September of 2012, Plaintiff began to experience serious respiratory complications that got progressively worse as the days went on. Prior to this time Plaintiff was in good health. These difficulties worried him intensely. Plaintiff discovered that black lung, silicosis and pulmonary disease can cause these respiratory conditions, since his only possible exposure to coal and rock dust was during the period of his employment with the railroad. On October 7th, 2012, Plaintiff contacted the CSX headquarters located at 500 Water Street Jacksonville, Florida 32202 in an effort to obtain the name and

---

[2] When needed, the Court utilizes the pagination assigned to Echols's submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in quotations from Echols's submissions.

4

> address of the Union that represented him during the period of his employment with the railroad.
>
> After diligently researching the symptoms and causes of black lung, silicosis or other pulmonary lung disease, Plaintiff came to the belief that he contracted this occupational disease and that the accumulated effects of the deleterious substances, coal and rock dust, began to manifest itself in his respiratory complications. CSX records clearly show that the railroad had conducted silicosis testing on its employees including Plaintiff in the mid-1990[s] without notifying Plaintiff of the purpose for the testing or any positive results. On October 28, 2012 and January 15, 2013, Plaintiff contacted his Union representative by U.S. mail in an effort to obtain the results of silicosis testing conducted by CSX, to no avail. On July 1st, 2013, Plaintiff directly contacted CSX headquarters by U.S. mail to obtain the results of silicosis lung testing during the period of his employment.

(Id. ¶¶ 7-8 (paragraph numbers omitted).) On July 25, 2013, the medical department at Nottoway Correctional Center ordered that Echols undergo diagnostic lung testing. (Id. ¶ 9.) Subsequently, Echols "was diagnosed with a Chronic Obstructive Pulmonary Lung Disorder caused by railroad dust conditions." (Id.)

Echols's Complaint raises the following claims for relief:

Claim One: "Violation of Federal Safety Appliance Act 45 U.S.C.S. 1-16 and Occupational Safety and Health Act subsection 1910.134 regulations." (Id. at 7.)[3]

---

[3] The Federal Safety Appliance Act ("FSAA") "imposes a number of safety requirements on railroads." Phillips v. CSX Transp., Inc., 190 F.3d 285, 288 (4th Cir. 1999). However, "[t]he FSAA does not create an independent cause of action for those injured because of a violation of the Act." Id. (citing Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969)). Instead, "for railroad employees injured because of a

Claim Two: "Negligen[t] exposure to harmful and hazardous coal and rock dust." (Id. at 9.)

Claim Three: "Emotional distress and mental anguish." (Id. at 14.)

Echols seeks $800,000.00 in compensatory and punitive damages. (Id. at 16.)

### III. ANALYSIS

CSX moves to dismiss Echols's Complaint as barred by the applicable statute of limitations. (Mem. Supp. Mot. Dismiss 1, 7-9, ECF No. 26.) CSX also opposes Echols's Motion to Amend, asserting that the Proposed Amended Complaint is futile because it would still be barred by the statute of limitations. (Br. Opp. Mot. Amend 1, ECF No. 37.) As discussed below, the Court agrees that Echols's Complaint is untimely. The Court also agrees that Echols's Motion to Amend is futile, as well as brought in bad faith.

---

FSAA violation, FELA provides the cause of action." Id. (citing Crane, 395 U.S. at 166). Likewise, Occupational Safety and Health Act ("OSHA") regulations "provide evidence of the standard of care exacted of employers, but they neither create an implied cause of action nor establish negligence per se." Albrecht v. Baltimore & Ohio R.R. Co., 808 F.2d 329, 332 (4th Cir. 1987) (quoting Melerine v. Avondale Shipyards, Inc., 659 F.2d 706, 707 (5th Cir. 1981)). Echols's claims are not independent; rather, Echols has a single cause of action under FELA. See 45 U.S.C. § 51 (FELA permits a railway employee to recover for an "injury . . . resulting . . . from [his employer's] negligence"); Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 550 (1994) (noting that "damages for negligent infliction of emotional distress are cognizable under FELA").

6

A.  Statute of Limitations Governing FELA Actions

"No action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. "[T]his statute of limitations is not an affirmative defense; instead, compliance with 45 U.S.C. § 56 is a condition precedent to recovery under the Act. Failure to bring suit within the statutory period 'destroys the employer's liability' and bars the claimant's recovery." Johnson v. Norfolk & W. Ry. Co., No. 92-1719, 1993 WL 17061, at *1 (4th Cir. Jan. 28, 1993) (quoting Emmons v. S. Pac. Transp. Co., 701 F.2d 1112, 1117 (5th Cir. 1983)). "The burden is therefore on the claimant to allege and to prove that his cause of action was commenced within the three-year period." Id. (quoting Emmons, 701 F.2d at 1118); see Cash v. Norfolk S. Ry. Co., No. 6:13-CV-00056, 2015 WL 178065, at *4 (W.D. Va. Jan. 14, 2015) (noting that "[a] plaintiff must allege compliance with the statute of limitations as an element of his prima facie case" under FELA).

"[A] cause of action under FELA for an occupational disease does not accrue when the injury is inflicted, but rather when the plaintiff becomes, or should have become, aware of his injury." Townley v. Norfolk & W. Ry. Co., 887 F.2d 498, 501 (4th Cir. 1989); see Urie v. Thompson, 337 U.S. 163, 169-70 (1949); Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 86 (2d

7

Cir. 2003) (an action under FELA "accrues when 'the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury'" (quoting <u>Ulrich v. Veterans Admin. Hosp.</u>, 853 F.2d 1078, 1080 (2d Cir. 1988))). A plaintiff need not "fully realize the extent of his injury" before accrual; instead, his claim accrues when he is "aware of the critical facts concerning his injury and its causation." <u>Bealer v. Missouri Pac. R.R. Co.</u>, 951 F.2d 38, 39 (5th Cir. 1991) (citations omitted). Moreover, a plaintiff need not receive a formal medical diagnosis before his cause of action accrues, as the lack of a formal diagnosis "would not relieve him of his duty of exercising due diligence based upon strong indications that he did, in fact, have an injury." <u>Mix</u>, 345 F.3d at 87. Furthermore, "knowledge of the specific cause of a work-related injury is not required to trigger the statute of limitations in a FELA action. Rather, a FELA claim accrues when the plaintiff knows or should know that his injury is merely work-related." <u>Matson v. Burlington N. Santa Fe. R.R.</u>, 240 F.3d 1233, 1236 (10th Cir. 2001) (citing <u>Bealer</u>, 951 F.2d at 39). Overall, the discovery rule "imposes on plaintiffs an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury." <u>Id.</u> at 1235.

B. Echols's Complaint Is Untimely

Echols filed his Complaint on May 10, 2016.[4] In order for his suit to be timely filed, his FELA claims must have accrued no earlier than May 10, 2013. The record, however, reflects that Echols's FELA claims occurred well before that date. Specifically, in his Complaint, Echols alleges that he began to experience "serious respiratory complications" in September of 2012. (Compl. ¶ 7.) Echols indicates that "[t]hese difficulties worried him intensely." (Id.) He "discovered that black lung, silicosis and pulmonary disease can cause these respiratory conditions, since his only possible exposure to coal and rock dust was during the period of his employment with the railroad." (Id.) On October 7, 2012, Echols contacted CSX's headquarters to obtain the name and address of his former labor union. (Id.) "After diligently researching the symptoms and causes of black lung, silicosis or other pulmonary lung disease, Plaintiff came to the belief that he contracted this occupational disease and that the accumulated effects of the deleterious substances, coal and rock dust began to manifest itself in his respiratory complications." (Id. ¶ 8.) Subsequently, on October 28, 2012, and January 15, 2013, Echols

---

[4] The envelope in which Echols mailed his Complaint indicates that it was received in the mailroom at River North Correctional Center on May 10, 2016. (ECF No. 1-5, at 1.) The Court deems this to be the filed date. See Houston v. Lack, 487 U.S. 266, 276 (1988).

9

contacted his union representative "in an effort to obtain the results of silicosis testing conducted by CSX." (Id.)

Echols's Complaint clearly indicates that he knew that his former employment was a potential cause of his respiratory problems no later than October of 2012. The Court concludes that Echols's FELA claims accrued, at the latest, by October 28, 2012, well before May 10, 2013. See Townley, 887 F.2d at 501 (concluding that plaintiff's FELA action accrued "no later than 1980 when he admitted in his letters to [the railway] that he suspected that he suffered from black lung and that his condition was caused by his work on the railroad"). Accordingly, Echols's claims are barred by the applicable statute of limitations.

C. Echols's Motion To Amend

1. Overview Of Echols's Proposed Amended Complaint

In response, in an attempt to cure the issue of timeliness, Echols has filed a Motion to Amend, along with his Proposed Amended Complaint. With minor exceptions, Echols's Proposed Amended Complaint is identical to his initial Complaint. In his Proposed Amended Complaint, Echols seeks to amend his request for relief to $8,000,000.00 in damages. (ECF No. 36-2, at 16.) Echols also changes the date he alleges that he began to experience serious respiratory complications to June of 2013. (Id. at 3.) Finally, Echols omits that he wrote to his union

representative on October 28, 2012, to obtain the results of silicosis testing. Specifically, Echols states:

> On or about June of 2013[], Plaintiff began to experience serious respiratory complications that got progressively worse as the days went on. Prior to this time Plaintiff was in good health. These difficulties worried him intensely. Plaintiff discovered that black lung, silicosis and pulmonary disease can cause these respiratory conditions, since his only possible exposure to coal and rock dust was during the period of his employment with the railroad. On October 7th, 2012, Plaintiff contacted the CSX headquarters located at 500 Water Street Jacksonville, Florida 32202 in an effort to obtain the name and address of the Union that represented him during the period of his employment with the railroad.
> After diligently researching the symptoms and causes of black lung, silicosis or other pulmonary lung disease, Plaintiff came to the belief that he contracted this occupational disease and that the accumulated effects of the deleterious substances, coal and rock dust began to manifest itself in his respiratory complications. CSX records clearly show that the railroad had conducted silicosis testing on its employees including Plaintiff in the mid-1990[s] without notifying Plaintiff of the purpose for the testing or any positive results. January 15, 2013 Plaintiff contacted his Union representative by U.S. mail in an effort to obtain the results of silicosis testing conducted by CSX, to no avail. On July 1st, 2013, Plaintiff directly contacted CSX headquarters by U.S. mail to obtain the results of silicosis lung testing during the period of his employment.

(Id. at 3-4 (footnote omitted).) Echols's Proposed Amended Complaint merely changes the date on which he contends he began to experience respiratory problems in order to have his claims fit within the applicable limitations period. However, Echols's amendment to the date makes little sense, is in bad faith, and is futile.

11

## 2. Discussion of Futility And Bad Faith

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). For instance, "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). The Court appropriately denies as futile leave to amend, when the applicable statute of limitations bars the proposed amended complaint. See Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011). As explained below, that is the case here.

In addition, "[b]ad faith includes seeking to amend a complaint for an improper purpose, or seeking leave to amend after repeated 'pleading failures.'" Wilkins v. Wells Fargo Bank, N.A., No. 2:15CV566, 2017 WL 1031717, at *2 (E.D. Va. Mar. 8, 2017) (citations omitted); see GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 381 (M.D.N.C. 1988) ("Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage." (citing 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1487 n.63 (1971 and 1987 Supp.))). For example, the United States Court of Appeals for the Fourth Circuit has held that a plaintiff acted

12

in bad faith in seeking to amend his complaint to "artificially inflate . . . damages in order to obtain subject matter jurisdiction." Peamon v. Verizon Corp., 581 F. App'x 291, 292 (4th Cir. 2014). Furthermore, "[f]acts in an amended complaint that are wholly inconsistent with facts alleged in the original complaint can be indicative of the plaintiff's bad faith and provide a basis for denying leave to amend." Cadmus v. Williamson, No. 5:15-CV-00045, 2016 WL 929279, at *19 (W.D. Va. Feb. 1, 2016) (citations omitted). While "it is not always improper for a plaintiff to revise the alleged facts in an amended complaint[,] . . . [t]his does not mean, however, that a plaintiff may fraudulently alter the facts from one complaint to the next . . . ." Id. (internal citations omitted).

### 3. Echols's Proposed Amended Complaint Is In Bad Faith And Is Futile

In his Motion to Amend, Echols contends that his initial Complaint "omitted several errors to which the defendant has based his response to." (Mot. Amend ¶ 5.) Echols states:

> The Plaintiff's suit omitted that he started having respiratory complication in September 2012.
> And that due to such he wrote CSX in October 2012.
> However, this statement was false. The Plaintiff who has an IQ of 70 see Exhibit M1 (Competency Evaluation) and has been labeled as Literacy Incentive Program (Lip) by VAD.O.C. Educational department See[] Exhibit M2 (D.O.C. Educational Department) had the assistance of a prison layman.
> The Plaintiff prepared the necessary paperwork for the layman.

13

> However, the medical records were not the Plaintiff's medical records.
> The layman prepared the suit based off the wrong records, which caused him to misstate a critical fact.
> The Plaintiff did not experience respiratory difficulty until the endings of June 2013 see Exhibit M3 (Medical records of July). He was placed on the list to see the sick call nurse at which time they ordered X-rays.
> It was only after speaking with Medical that he was informed that he should contact CSX because they believed his injuries [were] caused by his time at the railroad.
> The Plaintiff informed medical that CSX conducted a test in 1994 but was uncertain as to the nature of the test.
> At no time did the Plaintiff contact his union rep requesting his test result.
> He then was informed to write them and ask for the results of the test.
> The Plaintiff then wrote CSX and asked for his test results in July 2013.[5]
> The Plaintiff explained his situation the best he could to the layman which left the layman to assume facts because the Plaintiff could not articulate himself effectively to help the layman.
> This error is in part to the Plaintiff's inability to understand the law and the facts necessary to make a claim in the court of law.
> The Plaintiff is now being helped by one of the law library clerks at River North Correctional Center (Arsean Hicks) who saw the errors omitted.
> The plaintiff respectfully requests that September 2012 be amended and replaced with June 2013. As the Plaintiff's medical records indicate that he started having respiratory difficulties and was seen July 25, 2013 by the medical department See Exhibit M3 (July medical record).

(Mot. Amend ¶¶ 6-21 (paragraph numbers omitted).)

---

[5] The Plaintiff's letter dated in Oct 2012 was not in inquiry as to any condition because he had not yet suffered any injury. His inquiry was only for the address of his union rep for the time he worked for the railroad.

The Court does not find these reasons to be credible. Echols declared, under the penalty of perjury, that his initial Complaint was "true and correct." (Compl. 17.) Now, almost a year after filing his initial Complaint, Echols seeks to lay the blame for his "errors" on the prison layman who assisted him in preparing his Complaint. Clearly, Echols wishes to amend his complaint to allege facts that are wholly contradictory to his initial Complaint so as to avoid having his suit barred by statute of limitations.

Even if the Court accepted Echols's argument that he seeks to amend his Complaint in good faith, his proposed amendment is futile. As noted above, Echols seeks to amend his Complaint to allege that he did not begin to experience respiratory problems until June of 2013. However, in the next paragraph, Echols also alleges that on January 15, 2013, he contacted his union representative in an effort to obtain the results of the silicosis testing that CSX had conducted. (ECF No. 36-2, at 3-4.) The Proposed Amended Complaint, however, is devoid of any facts that would suggest any reason for Echols to obtain the results of such testing, unless he was experiencing medical problems that he strongly suspected resulted from his employment with CSX. Thus, Echols's Proposed Amended Complaint clearly indicates that he suspected his respiratory problems were a result of his employment on or before January 15, 2013, well

15

before May 10, 2013. Accordingly, Echols's Proposed Amended Complaint is in bad faith and is futile, because it continues to suggest that his claims accrued more than three years before he filed this suit. Therefore, Echols's claims will be dismissed as barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, CSX's Motion to Dismiss (ECF No. 25) will be granted. Echols's Motion to Amend (ECF No. 36) will be denied. CSX's Second Motion to Stay Proceedings (ECF No. 38) will be denied as moot. The action will be dismissed. The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to send a copy of this Memorandum Opinion to Echols and counsel of record.

It is so ORDERED.

/s/ RSP
Robert E. Payne
Senior United States District Judge

Date: June 12, 2017
Richmond, Virginia